UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

---

ENVIRONMENT AMERICA, INC.,
d/b/a ENVIRONMENT RHODE ISLAND**,**

      Plaintiff,

v.

KENYON INDUSTRIES, INC., d/b/a
BROOKWOOD FINISHING and
BROOKWOOD COMPANIES INCORPORATED,

      Defendants.

---

Civil Action No.
1:22-cv-00307-MSM-PAS

## CONSENT DECREE AND ORDER

Upon consideration of the Motion for Entry of Consent Decree and Order filed by

the Parties, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

### I.    BACKGROUND

1.    Environment America, Inc., d/b/a Environment Rhode Island

("Environment Rhode Island" or "Plaintiff"), filed a Complaint in this action against

Kenyon Industries, Inc., d/b/a Brookwood Finishing, and Brookwood Companies

Incorporated (collectively, "Defendants") under the federal Clean Water Act, 33 U.S.C. §

1251, *et seq.* ("CWA"), for alleged violations of the CWA at Defendants' textile finishing

mill at 36 Sherman Avenue, Kenyon, Rhode Island ("the Facility").

2.    The Parties attest and the Court, by entering this Consent Decree and

Order (the "Consent Decree"), finds that this Consent Decree has been negotiated by all

the Parties in good faith; settlement will avoid continued litigation between the Parties;

1

settlement of this matter is in the public interest and in accordance with the CWA; and

entry of this Consent Decree is fair and reasonable.

3.      By entering into this Consent Decree, Defendants do not admit, nor has

there been an adjudication of, any facts or interpretations of law (except as provided in

Section II, Jurisdiction and Venue) or liability rising out of the conditions, operations, or

occurrences alleged in the Complaint.

4.      On the date this Consent Decree is filed with the Court, Plaintiffs shall

concurrently serve a copy of this Consent Decree on the United States Environmental

Protection Agency ("EPA"), the Regional Administrator of EPA Region I, and the United

States Department of Justice, consistent with the requirements of 33 U.S.C. § 1365(c)(3)

and 40 C.F.R. § 135.5.

## II.      JURISDICTION AND VENUE

5.      For purposes of this Consent Decree, Defendants agree that the Complaint

states a claim upon which relief may be granted pursuant to 33 U.S.C. § 1365.  This

Court has jurisdiction over the Parties and subject matter of this Consent Decree pursuant

to 28 U.S.C. § 1331 and 33 U.S.C. § 1365.  Venue is proper in this Court pursuant to 33

U.S.C. § 1365(c) and 28 U.S.C. §§ 1391(b) and (c).

## III.      APPLICABILITY

6.      The provisions of this Consent Decree shall apply to and be binding upon

the Parties and their respective officers, employees, successors, and assigns.

7.      The duties and obligations under this Consent Decree shall not be

modified, diminished, terminated or otherwise altered by the transfer of any legal or

equitable interest in the Facility or any part thereof.

8.      If, during the pendency of this Consent Decree, the Defendants (or any one of them) cease to operate the Facility, Defendants shall serve a copy of this Consent Decree upon the successor operator at least thirty (30) days prior to the contemplated transfer of operations and shall contemporaneously inform Plaintiff of such transfer.  In the event of a transfer of operations, Defendants shall condition any transfer, in whole or in part, of ownership of, operation of, or other interest (exclusive of any non-controlling, non-operational shareholder interest) in the Facility upon the agreement by the transferee to make the applicable terms and conditions of the Consent Decree applicable to the transferee.  The Parties shall petition the Court to modify the Consent Decree to substitute the successor operator for Defendants (or any one of them) as a Party hereto, as agreed to by Plaintiff and the owners of the Facility.  In the event the Facility relinquishes the Permit such that the Facility no longer requires the Permit, all provisions of this Consent Decree shall become void except for payment obligations in Paragraphs 18, 19 and 26 and the Defendants, their respective officers, employees, successors and/or assigns shall have no further duties or obligations under this Consent Decree.

9.      Definitions.  For the purposes of this Consent Decree, the following terms shall have the following meanings:

a.      "The Permit": RIPDES Permit No. RI0000191, issued by the Rhode Island Department of Environmental Management ("RIDEM") on February 25, 2022, to Kenyon Industries, Incorporated, with an effective date of April 1, 2022, pursuant to the National Pollutant Discharge Elimination System ("NPDES") permitting program of the CWA, 33 U.S.C. § 1342, to include any and all subsequent amendments, modifications, renewals or reissuances thereof.  This permit superseded a previous

3

version of the Permit that took effect on October 1, 2010.  The Parties acknowledge that the Defendants likely will seek an amendment or modification to the Permit to provide for a site- specific numeric effluent limitation for copper.

        b.       "Numeric Effluent Limitations":  Daily maximum and monthly average limitations on concentrations of copper, and required ranges for LC50 whole effluent toxicity, as set forth in the Permit:

     i.   Section I(A)(8): the maximum allowable daily copper concentration (currently 54.28 ug/l);

    ii.   Section I(A)(8): the maximum allowable monthly average copper concentration (currently 39.19 ug/l);

   iii.   Section I(A)(10): the $LC_{50}$ for *ceriodaphnia dubia* (water flea) (currently 50% or greater);

   iv.   Section I(A)(10): the $LC_{50}$ for *pimephales promelas* (fathead minnow) (currently 55% or greater).

## IV.    PERFORMANCE OBLIGATIONS

DISCHARGE MONITORING

    10.    Defendants shall comply with all monitoring and reporting requirements set forth in the Permit and the regulations of RIDEM and EPA.

COMPLIANCE MEASURES

    11.    Defendants shall implement compliance measures at the Facility as described below in Paragraphs 12 - 14 of this Consent Decree.

    12.    **PHASE ONE**:  to be completed within the time frames set forth below after entry of this Consent Decree, unless any of the following exceptions occurs:  (i)

4

RIDEM or other governmental approval is required for an action; (ii) failure of laboratory to timely return sampling data; (iii) force majeure event (as defined below); or (iv) by written agreement of the Parties ("Permitted Extensions").  In the event that an exception described in (i) through (iii) occurs, the Parties shall follow the procedures described in Paragraph 33, below, to determine the amount of any additional time allowed for completion.

      a.      **Increase in Alkalinity – increase in alkalinity will begin within one month of entry of the Consent Decree.**

Defendants will make regular, usually daily, additions of sodium hydroxide, lime, sodium bicarbonate, and/or magnesium hydroxide to its wastewater stream in order to increase alkalinity.  Defendants will strive to maintain a clarifier effluent alkalinity of at least 50 mg/L as CaCO3, with a target of 70 to 80 mg/L as CaCO3, as well as a target pH in the range of 6.8 to 7.2.

      b.      **Chemical Treatment – Initial Bench and Field Trials shall be completed within nine months of entry of Consent Decree.**

      i.      **Bench Scale Trials.**  Defendants will conduct a bench-scale treatability study to evaluate various combinations of chemical coagulants and polymers that may be effective at removing copper and that might be introduced into Defendants' wastewater treatment system using the existing treatment equipment. This may include, but is not limited to, evaluations using aluminum sulfate, poly-aluminum chloride, ferric chloride, and various organic and inorganic polymers.  Considerations in selecting the optimum chemical coagulant and polymer may include, but are not limited to, cost, effectiveness at removing copper, sludge generation, and permit compliance.

Screening tests will be performed first.  Once a treatment is selected by Defendants, additional testing will be performed to confirm the dosage and effectiveness.

               ii.      **Field Trials.**  Once Defendants select a treatment, Defendants will determine whether RIDEM authorization is required prior to modifying the Facility's wastewater treatment system treatment process and conducting a field evaluation using the selected coagulant and/or polymer.  Following RIDEM approval (if needed), Defendants will implement the treatment and evaluate performance of the modified wastewater treatment system over a three-month period (or according to any changes required by RIDEM), to begin after alkalinity levels are controlled and stabilized pursuant to Paragraph 12(a).  During this time, the company may experiment with substituting alternative coagulants and/or polymers and adjusting chemical dosage rates as deemed appropriate to optimize performance.

               c.      **Evaluate Clarifier and Final Effluent Fractionation – evaluation and fractionation shall begin within nine months of entry of the Consent Decree.**

Once chemical treatment has been successfully implemented in the field, Defendants will, on a monthly basis, collect a sample from the clarifier effluent and a sample from the final effluent.  These samples will be analyzed to determine the fractionation of soluble, colloidal, and soluble complexed copper.

               d.      **Wastewater Treatment Plant Operation**

During the period(s) of operating the modified treatment process, Defendants will follow instructions from its consulting engineer and will operate and maintain the wastewater treatment system to target the appropriate solids retention time

(a/k/a sludge age) while advancing proper sludge management. Defendants will provide for routine clarifier effluent characterization, while operating the RAS flow to appropriate range, and monitor dissolved oxygen, sludge volume index (SVI), and clarifier sludge in the aerated lagoon.

e.       Source Identification, Segregation and Substitution – identification, segregation and substitution, if Defendants in their sole discretion chose to substitute, shall begin within six months of entry of Consent Decree and will continue until Defendants in their sole discretion determine that source identification, segregation and substitution is either complete, infeasible, or should otherwise cease.

Concurrent with evaluating the effectiveness of chemical treatment, Defendants will take steps to identify and quantify sources contributing copper to the Facility's process wastewater stream.

The Parties acknowledge that identifying copper sources and/or implementing alternative non-copper contributing materials, chemicals, methods and/or processes will take time and is not necessarily a viable solution. The substitution of process chemicals and changes to methods or processes requires careful vetting, as the potential for, among other things, adverse impacts on product quality and business operations arises.

f.       **Polishing Pond Evaluation – evaluation shall be completed within nine months of entry of the Consent Decree.**

Defendants will perform an evaluation designed to evaluate whether the Polishing Pond improves the quality of the final effluent (as demonstrated by lowering the concentrations of key constituents).

In concert with the chemical treatment field trials discussed herein, Defendants will routinely collect samples of the overflow from the clarifier effluent combiner and of the final effluent overflow from the Polishing Pond. These samples will be analyzed for various parameters that will include: Alkalinity, pH, Total Copper, Soluble Copper, Total Suspended Solids, Chemical Oxygen Demand, soluble Chemical Oxygen Demand, Biological Oxygen Demand, Total Ammonia, Total Nitrate, Total Nitrite, Total Kjeldahl Nitrogen, Orthophosphate, and Total Phosphorus. The specific parameters can be adjusted or eliminated by agreement of the Parties. A comparison of the sample results will allow for a determination as to whether the Polishing Pond improves the quality of the final effluent.

13.    **PHASE TWO**: to be initiated if there is any exceedance of the Numeric Effluent Limitations for copper occurring within one year of (a) the completion of Phase One, or (b) the date fifteen (15) months after the entry date of this Consent Decree, whichever is earlier. Defendants shall, within six months of the first such exceedance, in their sole discretion, evaluate and decide whether to:

      i.      add thiol-based chemicals with a coagulant to target copper removal; and/or

      ii.      implement tertiary filtration processes following the clarifier or polishing pond (targeting enhanced particulate copper removal); and/or

      iii.      take any other steps that Defendants determine are needed to achieve compliance with the Permit.

14.    **PHASE THREE:** to be initiated if there is any exceedance of the Numeric Effluent Limitations for copper occurring within one year following the

8

expiration of Phase Two.  Defendants shall, within six months of the first such exceedance, in their sole discretion, evaluate and decide, whether:

        i.      To replace the mixed liquor pumping system that is used to transfer mixed liquor from the aerated lagoon to the flocculation tanks with a low shear device; and/or

        ii.     To upgrade:  flash mixing; flocculation; the clarifier inlet; and mixing and aeration through the aerated lagoon; and/or

        iii.    To evaluate the dewatering press filtrate to determine whether this stream is recycling soluble and colloidal copper back to the biological process.  If such recycling is occurring, then Defendants shall determine whether separate chemical treatment of this stream is needed; and/or

        iv.    To evaluate processes needed to degrade or remove soluble copper complexes, if needed, such as chemical oxidation or adsorption.

15.     If there is any exceedance of the Numerical Effluent Limits for copper occurring within one year following the expiration of Phase Two, Defendants shall pay a stipulated payment for each daily maximum and each monthly average copper violation until twelve consecutive months of compliance are achieved for each limit.  Both stipulated payments and the twelve-consecutive-month period of demonstrated compliance shall be tolled during pump replacement or implementation of other upgrades identified in Paragraph 14.  Notwithstanding anything hereto to the contrary, no stipulated payments shall be incurred prior to the expiration of Phase Two.

REPORTING

16.     Defendants shall provide Plaintiffs with the following:

a.     No later than six months after the entry of this Consent Decree, and every six months thereafter until all compliance measures in Paragraphs 12 - 14 have been evaluated or implemented, Defendants shall provide Plaintiffs with written, semi-annual progress reports that contain the following information:  (*i*) the date each completed compliance measure set out Paragraphs 12 - 14 above was evaluated or implemented, and any completed report(s) required as part of such evaluations and/or compliance measures; and (*ii*) for any evaluation or compliance measure not yet completed, a description of the status of such evaluations or measures.

b.     Defendants shall send Plaintiff their monthly Discharge Monitoring Reports and any associated data or correspondence, at the same time they are submitted to RIDEM.

COMPLIANCE WITH NUMERIC EFFLUENT LIMITATIONS

17.     Beginning with the start of the second calendar month following completion and implementation of any of the compliance measures set out in Paragraphs 12 - 14 above, or beginning July 1, 2025, whichever date comes first, Defendants shall achieve and shall thereafter maintain compliance with all effluent limitations for copper and whole effluent toxicity in the Permit.

## V.     PENALTIES

18.     Within thirty (30) days after the entry of this Consent Decree, Defendants shall pay to the U.S. Treasury a civil penalty of $10,000 in full settlement of any and all violations of the CWA alleged by Plaintiffs in this action that occurred on or before the filing of the Complaint through the date this Consent Decree is entered.

## VI.    ADDITIONAL PAYMENTS

19.    Defendants shall make an additional payment of $40,000 in settlement of the alleged violations that are the subject of this suit, as set forth in this Paragraph. Within thirty (30) days after the entry of this Consent Decree, Defendants shall make a payment of $40,000 to Wood-Pawcatuck Wild and Scenic Rivers Stewardship Council.

20.    Payments to Wood-Pawcatuck Wild and Scenic Rivers Stewardship Council shall be made to its fiscal agent, the Wood-Pawcatuck Watershed Association, at 203 Arcadia Road, Hope Valley, Rhode Island 02832.  Wood-Pawcatuck Wild and Scenic Rivers Stewardship Council shall agree, as a condition of receiving any funds pursuant to Paragraphs 19 and 23 of this Consent Decree: (i) to certify that Wood-Pawcatuck Watershed Association is a 501(c)(3) tax-exempt entity; (ii) to disburse any money it receives under this Consent Decree solely to fund a project or projects in the area proximate to the Facility, with the goal of promoting restoration, preservation, protection, or other beneficial impacts on water quality in the Wood-Pawcatuck River watershed; (iii) not to use any money received under this Consent Decree for litigation or political lobbying activities; and (iv) to submit to Plaintiff and Defendants on the first anniversary of receiving the payment described in this paragraph, and on each anniversary thereafter, a report describing how the money was spent, and certifying that the funds were used in the manner described in this Consent Decree, until all money is expended.

21.    In the event that Defendants trigger stipulated payments under Paragraph 15, or otherwise fail to comply with their obligations under Paragraph 17 of this Consent Decree, Defendants shall pay a stipulated payment of $2,000 for each exceedance of a

Numeric Effluent Limitation for copper and $4,000 for each exceedance of a Numeric

Effluent Limitation for whole effluent toxicity, as reflected on the Defendants' monthly

Discharge Monitoring Reports.  Notwithstanding the preceding sentence, for exceedances

of effluent limitations for copper for which the reported pollutant concentration is not

greater than one-hundred twenty-five percent (125%) of the applicable Numeric Effluent

Limitation, Defendants shall pay a stipulated payment of $500.  This $500 payment is

applicable only to the first three such exceedances; thereafter, all exceedances are subject

to a stipulated payment of $2,000.

22.     Except as provided in Paragraph 33, in the event that Defendants fail to

comply with the schedule for the completion of compliance measures set forth in

Paragraphs 12 - 14 of this Consent Decree, Defendants shall pay a stipulated payment for

each day following the required implementation date that a required compliance measure

has not been completed or implemented at the Facility, in the following amounts: $250

per day for days 1-30, $500 per day for days 31-60, and $1000 per day for each day

thereafter.

23.     Stipulated payments shall be payable monthly, on or before the fifteenth of

each month succeeding the month of the effluent violation or failure to meet a

compliance deadline, and shall be payable to the Wood-Pawcatuck Wild and Scenic

Rivers Stewardship Council, pursuant to the conditions enumerated in Paragraph 20.

Defendants shall notify Plaintiff in writing of any payment of a stipulated payment.

24.     Payments made under Paragraphs 18, 19, or 21 do not preclude Plaintiff

from pursuing enforcement of any of the terms of this Consent Decree by the Court.

25.     Stipulated payments shall be due automatically and without notice except

if the provisions of Paragraph 33 (Force Majeure/Delay) are invoked by Defendants.

Payments made under Paragraphs 18, 19, 21, or 22 of this Consent Decree shall not be

tax deductible by Defendants.  Any public statement made by Defendants in any press

release, in any oral or written material promoting Defendants' environmental or

charitable practices or record, or in Defendants' Annual Reports, that makes reference to

Defendants' payments to the organization described in Paragraph 20 shall include the

following language: "Payments to Wood-Pawcatuck Wild and Scenic Rivers Stewardship

Council were made pursuant to the settlement of alleged violations of the Clean Water

Act in an enforcement suit brought by Environment Rhode Island."

## VII.    COSTS OF LITIGATION

26.    Consistent with 33 U.S.C. § 1365(d), within thirty (30) days of the Court's

entry of this Consent Decree, Defendants shall pay the amount of $140,000 in full and

complete satisfaction of Defendants' obligation to reimburse the Plaintiff's reasonable

costs of litigation in this action (including reasonable attorney and expert witness fees) to

Plaintiff's counsel by company check payable to the National Environmental Law

Center; provided, that in any legal action by Plaintiff to enforce this Consent Decree in

which Plaintiff ultimately prevails or substantially prevails, the Court, in issuing any final

order, may award costs of litigation for such prevailing claims (including reasonable

attorney and expert witness fees) in the manner provided for in 33 U.S.C. § 1365(d).

## VIII.   ENFORCEMENT

27.     The Court shall retain jurisdiction of this case until the termination of the

Consent Decree to enforce the terms and conditions of the Consent Decree, to modify the

Consent Decree, and to resolve any disputes arising hereunder.  In the event Defendants

fail to comply with any provision of this Consent Decree, the Plaintiff may seek to

enforce this Consent Decree by motion in this case.

## IX.     GENERAL PROVISIONS

28.     The provisions of this Consent Decree shall be severable, and should any

provision hereof be declared invalid or unenforceable, the remainder shall continue in full

force and effect between the Parties.

29.     Defendants shall not assert any claim of confidentiality for any documents

or information provided to Plaintiff pursuant to this Consent Decree.  Notification to a

Party shall be deemed submitted on the date it is postmarked.  All correspondence

concerning this Consent Decree and all documents that are submitted pursuant to this

Consent Decree shall be addressed as follows:

As to the Plaintiffs:

> Matthew Donohue
> National Environmental Law Center
> 294 Washington Street, Suite 500
> Boston, MA 02108
> Email:  mdononue@nelc.org
> Telephone: (617) 747-4304

As to Defendants:

> Robin L. Main
> Hinckley Allen
> 100 Westminster Street
> Suite 1500
> Providence, RI  02903

14

Email:  rmain@hinckleyallen.com
Telephone:  (401) 457 5278

And

Mary Ann C. Ball
Vice President and General Counsel
Brookwood Companies Incorporated
485 Madison Avenue
Suite 500
New York, NY  10022
Email:  maryann@brookwoodcompanies.com
Telephone:  (212) 551-0154

30.     No changes, additions, modification, or amendments of this Consent Decree shall be effective unless they are set out in writing and agreed to by all Parties to the Consent Decree and approved by the Court.

31.     The effective date of this Consent Decree shall be the date of its entry.

## X.     FORCE MAJEURE/DELAY

32.     "Force Majeure" for the purposes of this Consent Decree is defined as an event arising from causes beyond the control of Defendants or the control of any entity controlled by Defendants, including their consultants and contractors, which could not have been foreseen and prevented by the exercise of all reasonable diligence, which delays or prevents the completion of any of the compliance measures by the dates set forth in Paragraphs 12 - 14.  An increase in costs, changed financial circumstances, or Defendants' economic inability to comply are not Force Majeure events.  Force majeure does not apply to any other provision of this Consent Decree.

33.     If any event occurs that causes or may cause delay in the completion of any of the compliance measures by the dates set forth in Paragraphs 12 - 14, Defendants shall notify Plaintiff within ten (10) working days of the date on which Defendants

became aware of the potential delay.  Upon notification, Plaintiff shall have the right to request all necessary documentation explaining the potential delay.  If requested, Defendants shall have ten (10) working days from the date of the request to provide the documentation.  If Defendants request an extension of the deadlines specified in Paragraphs 12 - 14, Plaintiff shall have the right to grant all or part of the extension requested.  If the Parties cannot reach agreement, Defendants shall have the right to apply to the Court for an extension of time, but shall have the burden of proving to the Court that refusal by Plaintiff to grant the requested extension was unreasonable based on the information then available to Plaintiff.  In no event will Defendants be required to pay stipulated payments during the time between the date which Plaintiff receives such a request from Defendants and the date which a final decision is issued regarding such request.  If the final decision denies Defendants' request for an extension, Defendants shall pay all stipulated payments that were deferred during the pendency of the request.

## XI.    TERMINATION, RESOLUTION OF CLAIMS, AND MISCELLANEOUS PROVISIONS

34.    This Consent Decree shall expire once Defendants have completed the compliance measures set forth in Paragraphs 12 - 14, and have demonstrated compliance, through their Discharge Monitoring Report submissions, with all Numeric Effluent Limitations for twelve consecutive months following the compliance date specified in Paragraph 17.

35.      This Consent Decree constitutes a settlement of all claims for civil

penalties and injunctive relief pursuant to the CWA for the violations alleged in the

Complaint.

36.      Except as expressly set forth in this Consent Decree, this Consent Decree

sets forth all of the obligations of the Parties and represents the complete and exclusive

statement of the Parties with respect to the terms of the settlement agreement embodied

by this Consent Decree; any other representations, communications, or agreements by

or between the Parties shall have no effect.

37.      The Parties shall file a notice with the Court certifying that the

requirements of Paragraph 34 have been fulfilled and, as a result, the Consent Decree is

terminated.

### XII.    CONSENT TO ENTRY OF CONSENT DECREE

38.      Each of the Parties consents to the entry of this Consent Decree, subject to

the Court's approval of this Consent Decree.  The undersigned representatives of each

Party certify that they are fully authorized by the Party to enter into the terms and

conditions of this Consent Decree and to execute and legally bind the represented Parties

to it.  This Consent Decree can be signed in counterparts.


Judgment is hereby entered in accordance with this Consent Decree and Order this ___23rd

day of ___May___, 2023.

_____
Mary S. McElroy
United States District Judge

AGREED AND CONSENTED TO:


FOR PLAINTIFF ENVIRONMENT AMERICA, INC. d/b/a ENVIRONMENT RHODE ISLAND:


Date:  5/17/2023

_____
John Rumpler
Clean Water Program Director
Environment Rhode Island / Environment America

18

FOR DEFENDANTS KENYON INDUSTRIES, INC., d/b/a BROOKWOOD FINISHING and BROOKWOOD COMPANIES INCORPORATED:

_RGalloMarquart_____          Date: _5/19/23_____
Name:  Regina Gallo /Marquart
Title:  Chief Operating Officer
Kenyon Industries, Inc.



_____          Date: _____
Name:  Frank C. Montie
Title:  President & Chief Executive Officer
Brookwood Companies Incorporated

FOR DEFENDANTS KENYON INDUSTRIES, INC., d/b/a BROOKWOOD
FINISHING and BROOKWOOD COMPANIES INCORPORATED:


_____          Date: _____
Name:  Regina Gallo  Marquart
Title:  Chief Operating Officer
Kenyon Industries, Inc.




_____          Date:  05/19/23
Name:  Frank C. Montie
Title:  President & Chief Executive Officer
Brookwood Companies Incorporated

19